UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEISHA THOMPSON, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> MENORAH PARK CENTER FOR SENIOR LIVING BET MOSHAV ZEKENIM HADATI <br><br> Defendant. | CASE NO. 1:17-cv-02580 <br><br> SENIOR JUDGE CHRISTOPHER A. BOYKO <br><br> MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. <br><br> **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |

**I.     INTRODUCTION**

Representative Plaintiff Keisha Thompson, on behalf of herself and all Opt-In Plaintiffs ("Plaintiffs"), and Defendant Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati ("Defendant" or "Menorah Park") (collectively with Plaintiffs, "the Parties") respectfully move this Honorable Court to approve the proposed settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as corresponding state wage-and-hour statutes. Plaintiff asserted that Defendant violated the FLSA by failing to pay its hourly, non-exempt registered nurses, licensed practical nurses, and nursing assistants, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek. Specifically, Plaintiff alleges that Defendant required Plaintiff and other similarly-situated

employees to perform off-the-clock work at the end of their shifts, including, but not limited to: (a) completing patient charts; (b) completing other required documentation/paperwork; and/or (c) completing patient care/treatments.

Defendant denies all Plaintiff's claims, and denies that class or collective status is warranted. Defendant also denies that any employee was paid improperly or made to work "off-the-clock."

If approved by the Court, the Settlement will provide for the issuance of Individual Payments within twenty-one (21) days.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and was reached on August 31, 2021 with the assistance of Mediator Peggy Foley Jones.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1:   Joint Stipulation of Settlement and Release
Exhibit 2:   Individual Settlement Agreement and Release
Exhibit 3:   Declaration of Lori M. Griffin
Exhibit 4:   Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II. Factual and Procedural Background

### A. The Action

On December 12, 2017, Representative Plaintiff Keisha Thompson filed this Action as a result Defendant's alleged practices and policies of not paying its hourly, non-exempt employees, including Plaintiff and other similarly-situated employees, for all hours worked, allegedly in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy alleged violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03.

Plaintiff alleged that she and other similarly situated employees were only paid for work performed during their scheduled shifts and were not paid for work performed off-the-clock at the end of their shifts, including, but not limited to, completing patient charts, completing required documentation and paperwork, and patient care and treatment. Plaintiff also alleged that she and other similarly situated employees were required to clock out at the end of their scheduled shift and continue working.

Defendant denied all Plaintiff's claims, and denied that class or collective status was warranted. Per Defendant, employees were paid for all hours worked in accordance with all applicable laws. No employee was made to work "off-the-clock."

On August 31, 2018, the Parties attended a mediation with Magistrate Judge Baughman.

On May 28, 2019, the Parties attended a second mediation with Magistrate Judge Baughman.

On September 12, 2019, the Parties attended a third mediation with Magistrate Judge Baughman.

On May 20, 2020, Plaintiff filed her Motion for Conditional Certification, Expedited Opt-In Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs. (Doc. 43.) On July 2,

3

2020, Defendant filed its Opposition brief (Doc. 45), and on July 10, 2020, Plaintiff filed her Reply in Support. (Doc. 47.)

On July 2, 2020, Defendant filed a Motion to Strike Specific Paragraphs of the Declarations of Keisha Thompson, Rhonda Jackson, and Shantee Wilburn. (Doc. 46.) On July 17, 2020, Plaintiff opposed Defendant's Motion to Strike Specific Paragraphs of the Declarations of Keisha Thompson, Rhonda Jackson, and Shantee Wilburn (Doc. 48), and on July 22, 2020, Defendant filed its Reply Brief. (Doc. 49.)

On February 4, 2021, the Court granted Plaintiff's Motion for Conditional Certification and certified the following class:

> All former and current hourly RNs, LPNs, and nursing assistants employed by Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati during any period of time between January 11, 2015 and the present.

The Court approved the Notice to Potential Opt-Ins, which specified that, if they chose to join this litigation: (a) they would be bound by the judgment, whether it was favorable or unfavorable; (b) they also would be bound by, and would share in, any settlement that may be reached on behalf of the class; and (c) by joining this litigation, each designated the named Representative Plaintiff as his or her agent to make decisions on his or her behalf concerning the litigation, including the entering into a settlement agreement with Defendant.

On March 3, 2021, the notice was mailed via First Class Mail to 1,747 putative class members. (Ex. 3, Griffin Declaration at ¶ 23.) The Notice period closed on April 2, 2021. (*Id.*) In addition to Representative Plaintiff Keisha Thompson, 82 individuals opted-in to the case. (*Id.*)

On April 26, 2021, Defendant served discovery on Representative Plaintiff Keisha Thompson and all 82 opt-in Plaintiffs.

On August 31, 2021, the Parties attended mediation with Peggy Foley Jones.

4

### B. Negotiation of The Settlement

Between July 2018 and August 2021, the Parties engaged in an extensive exchange of information which included the initial production of time and pay information relating to the entire putative class, and then more specific information relating to Plaintiff and the Opt-Ins, performing extensive calculations to determine the alleged damages of Plaintiffs, numerous telephone discussions regarding the calculation of damages and potential resolution, and numerous motions filed. (*Id.* at ¶ 28.)

The Parties engaged in substantial investigation and both formal and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 29.) Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (*Id.*) This investigation also included a complete analysis and calculation of Plaintiffs' alleged damages. Counsel for the Parties engaged in numerous and lengthy discussions regarding the alleged damage calculations, Plaintiffs' claims and Defendant's defenses, and several unsuccessful mediations before the Magistrate Judge. (*Id..*) This included interviewing and obtaining declarations from numerous putative class members. (*Id..*)

Between August 2018 and August 2021, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions. (*Id.* at ¶ 32.)

On August 31, 2021, in an effort to reach a compromise and to avoid the continued expense and burden of litigation, the Parties reached an agreement to settle the Action on the terms set forth in the Settlement Agreement. (*Id.* at ¶ 34.)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 82 Opt-In Party Plaintiffs ("Plaintiffs"). Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Keisha Thompson as the Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties.[1]

The Total Settlement Amount is One Hundred Forty-Eight Thousand Dollars ($148,000.00) which is inclusive of (a) all of the Individual Settlement Payments to Plaintiffs; (b) the Service Award Payment as approved by the Court to Representative Plaintiff Thompson; and (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court. (Ex. 3, Griffin Declaration at ¶ 38.)

Fifty-Eight Thousand Three Hundred Eight Dollars and Eight Cents ($58,308.08) of the Total Settlement Amount will be divided into Individual Settlement Payments to the Plaintiffs, which equals 107.19% of the alleged overtime damages for the two-year statute of limitations period. (*Id.* at ¶ 39.) The Individual Payments were calculated proportionally by Plaintiff's counsel, based on each Plaintiff's alleged overtime damages during the Released Period. The Parties have agreed to a $25.00 minimum payment for any Opt-Ins that are outside of the two-year

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

statute of limitation period, or whose damages are less than $25.00. The Individual Payments are provided in Appendix 1 of the Settlement. (*Id.*)

Five Thousand Dollars ($5,000.00) of the Total Settlement Amount will be paid to Representative Plaintiff Keisha Thompson in additional to her individual payment for her services as Representative Plaintiff and in exchange for a general release. (*Id.* at ¶ 43.) In addition, Seventy-Five Thousand Dollars ($75,000.00) will be paid to Plaintiffs' Counsel for attorneys' fees and $9,691.92 for expenses incurred and expected to be incurred in the Action, and administration of the settlement. (*Id.* at ¶ 44.) This fee award is reasonable in light of the benefit achieved for Plaintiffs and is less than Plaintiffs' counsel's lodestar. (*Id.*.)

In exchange, the Action will be dismissed, and the Plaintiffs will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action which were or could have been asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and corresponding state wage and hour statutes for the Release Period.

### III.  THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Lori M. Griffin, and as explained below, Court approval is warranted on all scores.

#### A.  The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food*

*Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Griffin Declaration (*see* Exhibit 2), the standard supports approval of the Settlement.

### B.     The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny that applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

Here, the seven-factor standard supports approval of the Settlement. The parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. (*See* Exhibit

8

2.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. While only little formal discovery has yet commenced, the Parties have engaged in substantial investigation and exchange of records prior to and during the negotiations, and the issues are well understood by both sides. (*Id*. at ¶¶ 29-32.) The outcome is uncertain for Plaintiffs, and the risks of continued litigation are evident for both sides. (*Id*. at ¶ 47.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff. (*See* Exhibit 2.)

All Individual Payments were calculated proportionally by Plaintiff's counsel on each Plaintiff's alleged overtime damages during the Released Period. (*Id*. at ¶ 39.)

If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation. Plaintiffs' Counsel calculated the alleged overtime compensation by adding one hour to each week worked by Plaintiffs for those Plaintiffs with time records. (*Id*. at ¶ 41.) Any unpaid overtime compensation earned after adding the additional hour was multiplied by one and one-half times the Opt-In's regular rate. (*Id*.) For those Opt-In Plaintiffs without records, Plaintiffs' counsel utilized the average alleged unpaid overtime from the Opt-In Plaintiffs with records (.69 hours per week or 41.4 minutes per week), multiplied that by the number of workweeks worked by the Opt-In Plaintiffs, and then multiplied that number by one and one-half times their regular rate. (*Id*. at ¶ 42.)

Between December 13, 2015 and December 29, 2019, Plaintiffs were allegedly denied approximately $53,997.42 in overtime compensation based on the above calculations. (*Id*. at ¶ 40.)

Pursuant to the Settlement, each Plaintiff will receive 107% of his or her overtime damages for the two-year statute of limitations period. (*Id.* at ¶ 39.) Accordingly, the settlement proceeds are fair, reasonable, and adequate.

### C. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The Sixth Circuit underscored that "an award of attorney fees … 'encourage[s] the vindication of congressionally identified policies and rights,'" and thus "we have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir.1994), quoting *United Slate v. G M Roofing and Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984)*; *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985). In *Fegley*, the Court upheld an award of $40,000.00 in fees even though the plaintiff recovered $7,680.00 in damages. *Id.* Courts outside the Sixth Circuit similarly do not place an undue emphasis on the amount of the plaintiff's recovery. *Id.*, citing *Posner v. The Showroom, Inc.,* 762 F.2d 1010 (6th Cir.1985) (internal quotations omitted). See also *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir.1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Services, Inc.*, 2010 U.S. Dist. LEXIS 85153 (E.D. Pa. Aug 10, 2010) (awarding $76,066 in fees and costs after FLSA trial in which plaintiffs recovered $18,496); *Albers v. Tri-State Implement, Inc.*, 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages

totaled only $2,137.97); *Fedotoff v. American Testing Co.*, Case No. CV-07-626871 (Cuyahoga County Court of Common Pleas) (awarding $192,856 in attorneys' fees and costs although the plaintiff recovered $18,924 in overtime); *Perrin v. John B. Webb & Associates, Inc.*, 2005 WL 2465022 (M.D. Fla. 2005) (awarding $7,446.00 in attorneys' fees and costs although the plaintiff recovered $270.00, and recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Parks v. Eastwood Insurance Services, Inc.*, 2005 WL 6007833 (C.D. Cal. 2005) (awarding over $2 million in attorneys' fees and costs although the plaintiffs recovered $1.2 million); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); and *Holyfield v. F.P. Quinn & Co.*, 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).

Plaintiffs' Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibit 2.) The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $9,691.92, which included $6,227.50 incurred for issuance and administration of the Notice to approximately 1,747 potential opt-in plaintiffs, $407.86 incurred for the filing fee and postage for serving the complaint; $1,800.00 for the mediator's fee, $131.56 for letter communications with Opt-In Plaintiffs; $575.00 for a public records search; and $500.00 for miscellaneous litigation expenses. (*Id.* at ¶ 50.) All expenses were incurred during the course of

11

the litigation of this Action or will be incurred during the administration of the Notice to the Class of the Settlement. (*Id.*.)

## IV. CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 4.

Respectfully submitted,

| | |
|---|---|
| /s/ Lori M. Griffin | /s/ Johanna Fabrizio Parker |
| Lori M. Griffin (0085241) | Johanna Fabrizio Parker |
| Chastity L. Christy (0076977) | Richard E. Hepp |
| Anthony J. Lazzaro (0077962) | Benesch, Friedlander, Coplan & Aronoff LLP |
| The Lazzaro Law Firm, LLC | 200 Public Square, Suite 2300 |
| The Heritage Building, Suit 250 | Cleveland, Ohio 44114 |
| 34555 Chagrin Boulevard | rhepp@beneschlaw.com |
| Moreland Hills, Ohio 44022 | jparker@beneschlaw.com |
| Phone: 216-696-5000 | |
| Facsimile: 216-696-7005 | *Attorneys for Defendant* |
| chastity@lazzarolawfirm.com | |
| anthony@lazzarolawfirm.com | |
| lori@lazzarolawfirm.com | |

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2021, a copy of the foregoing *Joint Motion For Approval of Settlement And Stipulation Of Dismissal With Prejudice* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

      /s/ Lori M. Griffin
      Lori M. Griffin