## JOINT STIPULATION
## OF SETTLEMENT AND RELEASE

Subject to approval by the United States District Court for the Northern District of Ohio (the "District Court"), Eastern Division, Plaintiff Keisha Thompson individually and on behalf of all Plaintiffs, and Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati ("Menorah Park") agree to the terms of this Joint Stipulation of Settlement and Release.

## DEFINITIONS

1.       "Action" shall mean the civil action in the United States District Court for the Northern District of Ohio, Eastern Division entitled *Keisha Thompson v. Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati*, Northern District of Ohio, Eastern Division, Case No. 1:17-cv-02580.

2.       "Plaintiffs' Counsel" shall mean Anthony J. Lazzaro and Lori M. Griffin of The Lazzaro Law Firm, LLC.

3.       "Representative Plaintiff" shall mean Keisha Thompson.

4.       "Plaintiffs" shall include Representative Plaintiff and the eighty-two (82) Opt-In Party Plaintiffs listed in Appendix 1.

5.       "Released Parties" shall mean Menorah Park, its parents, predecessors, successors, subsidiaries, and related and affiliated entities,  as well of each of its and their former, current and respective officers, directors, agents, attorneys, assigns, administrators, representatives, insurers, owners, shareholders, partners, and employees.

6.       "Parties" shall mean Plaintiffs and Menorah Park, and "Party" shall mean any one of the Parties.

7.       "Released Period" for Plaintiffs shall mean December 13, 2015 through the date of the Court's Order approving this Settlement and dismissing the Action with prejudice.

8.       "Final" shall mean the date the District Court has approved the Settlement.

9.       "Settlement" shall mean this Joint Stipulation of Settlement and Release.

## RECITALS

10.       Each recital is incorporated as part of this Settlement.

11.       On December 12, 2017, Representative Plaintiff Keisha Thompson filed this Action as a result of Menorah Park's alleged practices and policies of not paying its hourly, non-exempt registered nurses, licensed practical nurses, and nursing assistants, including Plaintiff and other similarly-situated employees, for all hours worked, allegedly in violation of the Fair Labor

15062829 v1

Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy alleged violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03.

12.    Plaintiff alleged that she and other similarly situated employees were only paid for work performed during their scheduled shifts and were not paid for work performed off-the-clock at the end of their shifts, including, but not limited to, completing patient charts, completing required documentation and paperwork, and patient care and treatment.  Plaintiff also alleged that she and other similarly situated employees were required to clock out at the end of their scheduled shift and continue working.

13.    Menorah Park denied all Plaintiff's claims, and denied that class or collective status was warranted.  Per Menorah Park, employees were paid for all hours worked in accordance with all applicable laws.

14.    On February 4, 2021 (over Menorah Park's objection), the Court granted Plaintiff's Motion for Conditional Certification and certified the following class:  All former and current hourly RNs, LPNs, and nursing assistants employed by Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati during any period of time between January 11, 2015 and the present.

15.    The Court approved the Notice to Potential Opt-Ins, which specified that, if they chose to join this Action: (a) they would be bound by the judgment, whether it was favorable or unfavorable; (b) they also would be bound by, and would share in, any settlement that may be reached on behalf of the class; and (c) by joining this Action, each designated the named Representative Plaintiff as his or her agent to make decisions on his or her behalf concerning the Action, including the entering into a settlement agreement with Menorah Park.

15.    On March 3, 2021, the Court-approved Notice was mailed to 1,747 putative class members.  The Notice period closed on April 2, 2021.  In addition to Representative Plaintiff, 82 individuals opted-in to the case.

16.    Plaintiffs believe that the Action is meritorious based on the alleged violations of the FLSA, and that the Action is appropriate for collective treatment.  Menorah Park denies that Plaintiffs have any meritorious claims, and further denies that the Action is appropriate for collective treatment.  The Parties agree that bona fide disputes exist between the Parties, including whether Plaintiffs and Opt-In Plaintiffs worked off-the-clock and whether Plaintiffs would be entitled to liquidated damages as Menorah Park claims it did not act willfully and had a good faith defense.

17.    The Parties reached the proposed Settlement in the matter after extensive good faith bargaining, which occurred during the period July 2018 and August 2021.  On August 31, 2021, the Parties reached a binding agreement to settle the Action on the terms set forth in the Settlement.

18.    Plaintiffs' Counsel represent that they have conducted a thorough investigation into the facts of this Action and have diligently pursued an investigation of Plaintiffs' claims against Menorah Park, including reviewing relevant documents, and researching the applicable law and

the potential defenses. Based on their own independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement is fair, adequate and reasonable and is in the best interest of the Plaintiffs in light of all known facts and circumstances. See Exhibit 3.

19.     Nothing in this Settlement is intended or will be construed as an admission by the Released Parties that Plaintiffs' claims in the Action have merit or that Menorah Park or any of the the Released Parties has any liability to Plaintiffs on those claims. The Parties acknowledge and agree that liability for the actions that are the subject matter of this Settlement and the amount of any damages if liability were to be established are disputed by Menorah Park. No violation of any law has been proven or established. The Parties further acknowledge and agree that this Settlement shall not be used to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity. Neither this Settlement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Settlement.

## SETTLEMENT PAYMENTS

20.     **Total Settlement Amount:** Menorah Park will pay in connection with the Settlement a Total Settlement Amount of One Hundred Forty-Eight Thousand Dollars ($148,000.00) which is inclusive of (a) all of the Individual Settlement Payments to Plaintiffs; (b) the Service Award Payment as approved by the Court to Representative Plaintiff Thompson; and (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court. Other than the employer share of payroll taxes per paragraph 24, Menorah Park's and the Released Parties' payment obligations are limited to the Total Settlement Amount.

21.     **Payments to Plaintiffs:** Fifty-Eight Thousand Three Hundred Eight Dollars and Eight Cents ($58,308.08) of the Total Settlement Amount will be paid to Plaintiffs in the amounts provided in Appendix 1.

22.     **Calculation of Individual Payments:** The Individual Payments have been calculated by Plaintiffs' Counsel and are based proportionally on each Plaintiffs' alleged overtime damages during the Released Period according to Menorah Park's records.

23.     **Treatment of Plaintiffs' Settlement Payments:** The Individual Settlement Payments to Plaintiffs will be treated as payment for wages and will be paid less applicable withholdings and deductions. Menorah Park will report to the IRS and issue to each Plaintiff an IRS Form W-2 for all amounts paid as wages under this Settlement. Menorah Park is responsible for payment of the employer's share of payroll taxes as required by law.

24.     **Class Representative Payments:** Five Thousand Dollars ($5,000.00) of the Total Eligible Settlement Amount will be paid to Representative Plaintiff Keisha Thompson as a Service Award for her service in this litigation. Menorah Park will issue to Representative Plaintiff a Form 1099-Misc., in Box 3, with respect to this Service Award. Representative Plaintiff will be responsible for all taxes owed with respect to her Service Award.

25.     **Plaintiffs' Counsel's Attorneys' Fees and Expenses:** Seventy-Five Thousand Dollars ($75,000.00) of the Total Settlement Amount will be paid to Plaintiffs' Counsel for attorneys' fees and $9,691.92 for expenses incurred in the Action.  Menorah Park will issue appropriate Form(s) 1099-Misc. with respect to the attorneys' fees and expenses.  To receive these payments, Plaintiff's counsel must provide Menorah Park with a Form W-9.  Plaintiff's Counsel is responsible for any taxes owed with respect to this fee and expense payment.

26.     **No Tax Advice.** The Released Parties are not providing any tax advice related to any payment under this Settlement, nor do the Released Parties guarantee any tax result related to any payment under this Settlement.

27.     **No Effect on Benefit Plans.** Payments under this Settlement shall not create any credit or any basis to change the calculation of benefits provided under any pension, retirement, or any other benefit or compensation plan, policy, program or arrangement. Such payments shall not modify any previously credited hours or service under any employee benefit plan, policy or bonus program sponsored by Menorah Park, and shall not be applied as salary, earnings, wages, or any other form of compensation for purposes of such plans, policies or programs.

## RELEASE OF CLAIMS

28.     **Released Claims:** Plaintiffs release and forever discharge the Released Parties from all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action, including but not limited to, unpaid wages, equitable relief, liquidated damages, interest, attorneys' fees, costs and expenses pursuant to the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), for the Released Period.  Plaintiffs understand that this release includes but is not limited to all claims that were asserted or could have been asserted in the Action, including all collective or class claims.  This release includes all claims relating to or arising out of the same transaction, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Action, and any claims challenging the practices that gave rise to the claims asserted in the Action.

29.     **Release by Representative Plaintiff**.  Concurrent with her execution of this Settlement, and in consideration of and in order to receive the Service Award Payment, Representative Plaintiff shall execute the individual release agreement attached as Exhibit 2.

30.     **Release of Attorneys' Fees and Expenses:** The payment of attorneys' fees and expenses to Plaintiffs' Counsel includes all of the attorneys' fees and expenses that will be paid to Plaintiffs' counsel, unless there is a breach of this Settlement or a need to file a motion or other documents to enforce the Settlement.  In consideration for these attorneys' fees and expenses, Plaintiffs' Counsel waives any and all claims to any further attorneys' fees and expenses in connection with the Action, unless there is a breach of this Settlement.

31.     The entry of final judgment in the Action shall release all claims set forth in this entire Section of the Settlement.

## APPROVAL AND DISMISSAL OF THE ACTION

32. **Cooperation:** The Parties agree to cooperate and take all steps necessary and appropriate to obtain final approval of this Settlement, to effectuate its terms, and to dismiss the Action with prejudice.

33. **Fair, Adequate and Reasonable Settlement:** The Parties agree that the Settlement is fair, adequate and reasonable and will so represent to the District Court.

34. **Joint Motion for Approval of Settlement:** The Parties will jointly move the District Court for entry of an order, proposed and attached as Exhibit 4, granting final approval of the Settlement, approving the amounts payable to Plaintiffs and Plaintiffs' Counsel, and entering judgment dismissing the Action with prejudice.

35. **Dismissal With Prejudice of the Action:** Upon entry of the District Court's final approval order, the Action shall be dismissed with prejudice, and final judgment shall be entered.

## SETTLEMENT ADMINISTRATION

36. **Distribution Process:** Within twenty-one (21) days after the Court's entry of an Order granting approval of the Settlement and dismissal of the Action with prejudice (in a form identical or substantially identical to Exhibit 4), Menorah Park will mail the Individual Payments to Plaintiffs, the Service Award to Representative Plaintiff (provided she has executed and returned the individual release agreement), and the attorneys' fees and expenses to Plaintiffs' Counsel. Menorah Park will issue separate checks to each Plaintiff and Plaintiffs' Counsel. Plaintiffs' Counsel will provide to Menorah Park the most recent addresses of Plaintiffs for purposes of mailing the checks. If any checks are returned as undeliverable, Menorah Park will mail the checks to Plaintiff's counsel who will make reasonable efforts to locate the Plaintiffs and redeliver the checks. Any checks that become lost or void during the six (6) month period after the initial distribution will be reissued to any Plaintiff upon request and without charge to the Plaintiff.

## PARTIES' AUTHORITY

37. The respective signatories to the Settlement represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

## CLASS COUNSEL SIGNATORIES

38. Representative Plaintiff executes this Settlement on behalf of herself and in her representative capacities on behalf the other Plaintiffs. It is agreed that it is burdensome to have all of the Plaintiffs execute this Settlement. Furthermore, the Court-approved Notice previously advised the Plaintiffs that if they chose to join this Action: (a) they would be bound by the judgment, whether it was favorable or unfavorable; (b) they also would be bound by, and would share in, any settlement that may be reached on behalf of the class; and (c) by joining this Action, each designated the named Representative Plaintiff as his or her agent to make decisions on his or her behalf concerning the Action, including the entering into a settlement agreement with Menorah

Park.  This Settlement shall have the same force and effect as if each Plaintiff executed this Settlement

## MUTUAL FULL COOPERATION

39.     The Parties and their respective counsel agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and such other actions as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the District Court, or otherwise, to effectuate the terms of this Settlement.

## NO PRIOR ASSIGNMENTS

40.     The Parties represent, covenant and warrant that they have not directly or indirectly, assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released and discharged in this Settlement.

## NO ADMISSION

41.     Nothing contained in the Settlement shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing on the part of the Released Parties. The Released Parties expressly deny all such claims.  No violation of law has been proven or established.  Neither this Settlement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Settlement.

## CONSTRUCTION

42.     This Settlement shall be interpreted in all respects by the internal laws of the State of Ohio without reference to conflicts of laws principles.  The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party participated in the drafting of this Settlement.

## SEVERABILITY

44.     This Settlement is meant to resolve and forever discharge any all of the claims released under it.  If any part of this Settlement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Settlement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in the Settlement shall for any reason be held by a court of competent jurisdiction to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such

provisions(s) shall be construed to be limited or reduced so as to be enforceable to maximum extent permitted under the applicable law, provided that, without Court approval of the Settlement, dismissal of the Action with prejudice, and release of all identified claims, no payments by Menorah Park are required.

## MODIFICATION

45.     This Settlement may not be changed, altered or modified, except in writing and signed by the Parties, and approved by the District Court.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

## INTEGRATION CLAUSE

46.     This Settlement contains the entire agreement between the Parties, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, relating to the resolution of the Action.

## BINDING ON ASSIGNS

47.     This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## COUNTERPARTS

48.     This Settlement may be executed in counterparts, and may be signed electronically via PDF.  When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.  Electronic and facsimile transmissions of this Settlement shall be deemed originals.

## BREACH

49.     If either Party breaches any of the terms and conditions of this Settlement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred to enforce the terms and conditions contained herein.

## JURISDICTION

50.     The Parties will request that the District Court retain jurisdiction to enforce the terms of the Settlement.

## EXECUTION BY PARTIES AND THEIR COUNSEL

Dated: Oct 5, 2021

KEISHA THOMPSON

Keisha Thompson (Oct 7, 2021 10:30 EDT)

Representative Plaintiff, Individually
and on Behalf of all Plaintiffs

Dated: Oct 6 2021

MENORAH PARK CENTER FOR SENIOR LIVING
BET MOSHAV ZEKENIM HADATI

By: Jamie Herbst

Its: Vice President, Human Resources

Dated: Oct 5, 2021

LORI M. GRIFFIN
THE LAZZARO LAW FIRM, LLC

By: Lori M. Griffin
Lori M. Griffin (Oct 5, 2021 10:21 EDT)

Attorney for Plaintiffs

Dated: Oct. 7, 2021

JOHANNA FABRIZIO PARKER
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP

By:

Attorney for Menorah Park

*Thompson v. Menorah Park Center For Senior Living Bet Moshav Zekenim Hadati*

## Appendix 1

| **Name** | **Indv. Payment** |
| --- | --- |
| A'Vonna Hood | $83.21 |
| Aaliyah Lee | $113.71 |
| Alexandria Maxwell | $28.82 |
| Alisha Ragland | $25.00 |
| Amanda Whitsett | $62.40 |
| Angel Holman | $25.00 |
| Anton Sears | $416.03 |
| Brenda Heckman | $1,331.68 |
| Brittany Colon | $3,483.45 |
| Camille Williams | $4,010.53 |
| Charlisa Latson | $56.27 |
| Cheryl Brock | $633.61 |
| Christine Russell | $3,183.07 |
| Darranae Edwards | $113.99 |
| D'Atra Cunningham | $25.00 |
| Deandrea Clark | $196.51 |
| Deborah Ramirez | $25.00 |
| Desiree Battle | $157.82 |
| Dionna McDonald | $1,672.14 |
| Doneisha Kane | $963.79 |
| Donetta Briggs | $2,357.74 |
| Donyetta Huggins | $25.00 |
| Dorothy Rembert | $604.69 |
| Eastlyn Alleyne | $7,967.19 |
| Ebonie Slay | $95.13 |
| Erica Kesselring | $574.80 |
| Gerleena Calhoun | $87.34 |
| Gina Telman | $249.15 |
| Imani Tunson | $398.84 |
| Iris Williams | $265.29 |
| Jalila Kenney | $299.60 |
| Jami Schaefer | $449.55 |
| Jasmine Oliver | $9,780.87 |
| Jasmine Williams | $25.00 |
| Jeanette Hager | $25.00 |
| Jonathon Cunningham | $25.00 |
| Katherine Stancil | $790.25 |
| Kathryne Harvan | $25.00 |
| Keisha Thompson | $927.52 |
| Kenyatta Wilson | $731.45 |
| Kimberly Glover | $116.49 |
| Lekisha Spoon | $25.00 |
| Loretta Robinson | $1,078.74 |

*Thompson v. Menorah Park Center For Senior Living Bet Moshav Zekenim Hadati*

## Appendix 1

| Name | Indv. Payment |
| --- | --- |
| Mallory Brown-Coleman | $470.29 |
| Manju Jagari | $25.00 |
| Mary Takacs | $1,003.61 |
| Melisa Hernandez | $65.28 |
| Mia Harrison | $142.58 |
| Moesha Price | $56.14 |
| Molly Morgan | $391.10 |
| Morgan Sevel | $25.00 |
| Nicole Foy | $385.58 |
| Nigea Bowman | $31.68 |
| Octavia Griffin | $25.00 |
| Octavia Malcolm | $968.94 |
| Pomovah Welwean | $585.76 |
| Rakeya Rivers | $25.00 |
| Raneesha Jackson | $388.50 |
| Rasheedah Hardwick | $366.16 |
| Renada Simon | $102.69 |
| Rhonda Jackson | $1,392.14 |
| Robin Isabella | $25.00 |
| Ronald Corbitt | $129.80 |
| Sade Blackmon | $1,291.90 |
| Shamaine Lewis | $142.04 |
| Shanell Ross | $123.60 |
| Shantee Wilburn | $1,236.16 |
| Sheryl Johnson-Goodwin | $105.34 |
| Stacy Mousavi | $25.00 |
| Tameira Foster | $158.64 |
| Tanaisa Caver | $140.34 |
| Tanaya Gantt | $3,111.87 |
| Tanesha Lemon | $25.00 |
| Taruna Singh | $52.84 |
| Taylor Poindexter | $95.52 |
| Tiarra White | $170.17 |
| Tiffany Miller | $25.00 |
| Tracy Gilmartin | $1,006.15 |
| Tyonnia Long | $79.27 |
| Tywana Woody | $28.07 |
| Urvashi Patel | $25.00 |
| Wayne Hauser | $99.85 |
| Zaina Sanford | $229.39 |